IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT BINION and COREY LEA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-544-MHT-KFP |
| | ) | |
| THE UNITED STATES DEPARTMENT | ) | |
| OF AGRICULTURE and SONNY | ) | |
| PERDUE, Secretary of Agriculture, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiffs Robert Binion and Corey Lea, appearing pro se, bring this action against Defendants United States Department of Agriculture ("USDA") and USDA Secretary Sonny Perdue, alleging 13 causes of action arising from Plaintiffs' status as "socially disadvantaged farmers." Defendants filed a Motion to Dismiss (Doc. 65) with supporting memorandum (Doc. 66), and Plaintiffs filed a response (Doc. 70) with supporting memorandum (Doc. 71). Upon review of the parties' submissions and the relevant law, the undersigned RECOMMENDS that the motion to dismiss be GRANTED and this case be DISMISSED for the reasons set forth below.

## I.    PROCEDURAL HISTORY

Plaintiffs initiated this action in June 2018 by filing a 14-page Initial Complaint against Defendants. Doc. 1. The Court granted Plaintiffs leave to amend (*see* Doc. 18) and, in November 2018, Plaintiffs filed their First Amended Complaint, which consisted of 22 pages and 60 pages of exhibits. Doc. 19. Defendants moved to dismiss the First Amended

Complaint, arguing that it was a shotgun pleading that failed to provide sufficient facts to establish subject matter jurisdiction or a viable claim for relief. Doc. 37. After Defendants filed their motion, Plaintiffs filed a motion for leave to amend (Doc. 41) and a proposed Second Amended Complaint (Doc. 41-1), which consisted of 47 pages and nearly 100 pages of exhibits.

In an August 22, 2019 Recommendation, the Court agreed with Defendants that the First Amended Complaint met the criteria of a shotgun pleading for which Defendants were not expected to frame a responsive pleading. Doc. 46 (adopted at Doc. 49). However, the Court determined that Plaintiffs should be given an opportunity to remedy their deficient complaint.[1] Thus, the Court construed Defendants' motion to dismiss as a motion for a more definite statement, which it granted, and it also granted Plaintiffs leave to amend. *Id.*

However, upon review of Plaintiffs' proposed Second Amended Complaint, the Court determined that it also failed to comply with the Federal Rules of Civil Procedure. *Id.* Specifically, the Court stated, "Plaintiffs' proposed Second Amended Complaint . . . is still, largely, filled with argument and historical facts that are not appropriate or necessary in a complaint . . . ." *Id.* at 4. Thus, the Court directed Plaintiffs to conform each of their claims to the Federal Rules, "setting forth each claim individually, establishing that each plaintiff has standing to bring each claim, establishing jurisdiction in the Middle District

---

[1] *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (stating that, prior to "dismissing a shotgun complaint for noncompliance with [Federal Rule of Civil Procedure] 8(a), a district court must give the plaintiff 'one chance to remedy such deficiencies'") (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

of Alabama, the facts as alleged, and the relief/damages sought." *Id.* at 4-5. Finally, the

Court stated:

> Plaintiffs are *cautioned* that this is their final chance to properly articulate
> their claims, and their failure to remedy the defects may result in dismissal
> of the case with prejudice on shotgun pleading grounds. *See* Fed. R. Civ. P.
> 12(e) ("If the court orders a more definite statement and the order is not
> obeyed [. . .], the court may strike the pleading or issue any other appropriate
> order.")[.] The Plaintiffs are also *cautioned* that any further motions for leave
> to amend the complaint will be denied.

*Id.* at 5 (emphasis in original).

After some delay, Plaintiffs filed their Third Amended Complaint—the operative

complaint in this action—in July 2020.[2] Doc. 59.

## II.    THE THIRD AMENDED COMPLAINT

Plaintiffs' 49-page Third Amended Complaint is largely devoid of factual

allegations specific to Plaintiffs. Where such allegations exist, they are sparse and scattered

amongst long historical texts, extensive case law and statutes from other jurisdictions, and

references to individuals and entities that are not parties to this litigation.[3] The allegations

are also extraordinarily vague, as they do not explain where or when particular events

---

[2] The Court's August 22 Recommendation (Doc. 46), directing Plaintiffs to file an amended complaint in
compliance with the Federal Rules, did not require Plaintiffs to file a corrected Second Amended Complaint
by a date certain. Thus, on September 24, 2019, the Clerk of Court mistakenly docketed the *proposed*
Second Amended Complaint as *the* Second Amended Complaint. *See* Docs. 50 (the docketed Second
Amended Complaint) and 56 (subsequent order explaining the mix-up). Noting that the docketed Second
Amended Complaint had not been corrected to cure the pleading deficiencies identified in the August 22
Recommendation, the Court subsequently directed Plaintiffs to file a Third Amended Complaint by July
21, 2020. *See* Doc. 56.

[3] For instance, the first seven pages of the Complaint consist largely of copy-and-pasted historical writings
by "Author Pete Daniel"; numerous pages of the Complaint consist solely of Kentucky case law and
statutes; and, at one point, among other non-party references, the Complaint discusses "plaintiff Willie
Charles Kennedy," who is not a plaintiff in this action.

occurred. It is therefore difficult to discern exactly what Defendants allegedly did to Plaintiffs and what harm was allegedly caused as a result.

The Complaint alleges that both Plaintiffs are "socially disadvantaged farmers" who have longstanding pending discrimination complaints with the USDA. Doc. 59 at 8, 43. As to Binion, the Complaint merely alleges that he lives in Clanton, Alabama and that, at some unidentified time, "the ASCR invited the Black farmer to Washington to settle his [unidentified] case, along with Corey Lea" but "[t]he ASCR refused to settle their case and refused to issue a final agency decision." *Id.* at 9, 13. As far as the Court can tell, there are no further factual allegations specific to Binion in the Complaint. As to Lea, the Complaint alleges that he lives in Murfreesboro, Tennessee and that, at some point, Defendants failed to act on a moratorium to which he was entitled, "terminated [his] federal assistance by blocking the refinancing of [his] farmland [located in Warren County, Kentucky]," and refused to give him a hearing on the merits before an Administrative Law Judge. *Id.* at 9-10, 13. As a result, Lea lost his farmland. *Id.* at 13.

Based on these allegations, Plaintiffs state 13 causes of action, the majority of which relate to Lea's loss of his Kentucky farmland and several of which relate to alleged discrimination by the USDA.[4] As relief, Plaintiffs seek (1) that the County Committee

---

[4] Plaintiffs' causes of action span at least 38 pages and are entitled (1) The Equal Protection Component of the Due Process Clause of the Fifth Amendment; (2) Theory of Repudiation of Guaranteed Loan Contract Under The Doctrine of Third Party Beneficiary; (3) Third Party Beneficiary; (4) Equal Opportunity and Nondiscrimination (7 CFR 762.128(d)); (5) Covenant of Good Faith and Fair Dealings; (6) Foreclosure and Acceleration (7 CFR 762.149)); (7) § 766.358 Acceleration and Foreclosure Moratorium; (8) Lender Submission of Estimated Loss Claim (7 CFR 762.149) (Continued); (9) Continued Violation Doctrine of 15 U.S.C. § 1691 and 42 § U.S.C. 1981 . . .; (10) Kentucky Fraud or KRS 413.120; (11) Claim of Pattern and Practice of Withholding Documents and Denial of Right to Hearings . . .; (12) 5 U.S.C. § 706(1)(2) . . . . Inaction to enforce the moratorium provision of the 2008 Food Energy and Conservation Act later codified

System be declared unlawful; (2) that the Secretary allow socially disadvantaged farmers access to an ALJ upon request; (3) that the Secretary provide discovery and a "one day mini trial" in all determinations; and (4) $3,000,000 each in monetary damages. *Id.* at 47-48.

## III.    PRIOR LITIGATION HISTORY

Though factual context in the Third Amended Complaint is sparse and difficult to follow, Plaintiffs' prior litigation history helps shed light on this action.

### A.    Binion's Relevant Prior Litigation

Binion first filed a lawsuit in the Middle District of Alabama in October 2010, alleging that the USDA denied him farm loans and discriminated against black farmers. *See Binion v. Vilsack*, No. 2:10cv920 (M.D. Ala.). That lawsuit was dismissed in April 2011 for failure to effect service. *See id.* Several years later, Binion and other pro se plaintiffs filed a second lawsuit in the Middle District against Defendants challenging decisions covered by the *Pigford* class action.[5] *See Binion v. USDA*, No. 2:16cv657 (M.D. Ala.). In that lawsuit, Binion alleged that he was a prevailing *Pigford* class member, but the USDA nevertheless denied him loans and refused to give him a hearing on the merits before an ALJ. *See id.* This Court dismissed Binion's second lawsuit for lack of subject

---

under 7 C.F.R. 766.358 and the Pigford Settlement Agreement; and (13) 42 U.S. Code § 2000d and § 2.25 Assistant Secretary for Civil Rights . . . Pattern and Practice of Inaction to Violate the Equal Protection Component of the Due Process Clause of the Fifth Amendment. Doc. 59 at 9-47.

[5] The *Pigford* class action refers to a lawsuit in which black farmers sued the USDA and which is the subject of settlement agreements and a consent decree in the District Court for the District of Columbia. *See Binion v. USDA*, No. 2:16cv657 (M.D. Ala.), Doc. 32 at 2 (citing *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999), *affirmed by Pigford v. Glickman*, 206 F.3d 121 (D.C. Cir. 2000)).

matter jurisdiction, determining that the District Court for the District of Columbia has exclusive jurisdiction over *Pigford* claims.[6] *See id.*, Doc. 32.

## B.     Lea's Relevant Prior Litigation

Lea has filed countless unsuccessful lawsuits against Defendants and other parties in the Western District of Kentucky, the Court of Federal Claims, the Middle District of Tennessee, the District of Columbia, and this Court relating to the same general subject matter—the loss of his Kentucky farmland. As a result of his prolific filing, both the Western District of Kentucky and the Court of Federal Claims have barred Lea from filing any further similar lawsuits. In a 2016 Order, the Court of Federal Claims summarized the basic facts giving rise to each of Lea's lawsuits:

> [I]n November 2007, the now-dissolved company Corey Lea, Inc. obtained a loan from Farmers National Bank to purchase farm property. This loan was guaranteed by the [USDA] Farm Service Agency (FSA) through a loan guarantee agreement. As a result, Farmers National Bank held a first mortgage on 90 percent of the property, and the USDA FSA held a second mortgage on 10 percent of the property.[]

> Subsequently, in December 2007, [Lea] secured a loan from Independence Bank to fund the construction of a new house on the property and to refinance the existing loan from Farmers National Bank. According to [Lea], he requested a loan subordination from the USDA, however, the USDA denied the request after conducting an appraisal of the property and appraising the value of the property at $18,035.00 less than the amount of debt that [Lea] would incur with the new loan, if completed. Following this denial, [Lea] filed a complaint with the USDA Office of Civil Rights, which was received by the USDA on May 1, 2008, alleging that the denial of the loan resulted from racial discrimination.[]

> In February 2009, Farmers National Bank initiated a foreclosure action on the farm property due to a failure to make payments for five months. [Lea]

---

[6] This Court also noted the "shotgun nature" of the complaint in that case. *See Binion v. USDA*, No. 2:16cv657 (M.D. Ala.), Doc. 32 at 5.

alleges that, by July 28, 2009, the office of the USDA FSA responsible for adjudicating [his] discrimination complaint had requested suspension of the foreclosure action. In October 2009, however, Farmers National Bank was granted a Judgment and Order of Sale as to the farm property. Thereafter, [Lea] filed multiple suits . . . "seeking an injunction against the farm's foreclosure as well as damages for the USDA's alleged earlier discrimination."

*Lea v. United States*, 126 Fed. Cl. 203, 206-07 (Fed. Cl. 2016).

Since these events, which occurred more than a decade ago, Lea has filed countless lawsuits against Defendants and others based on numerous legal theories. While the various theories presented in each suit may differ—though they do not always—the basis of each of his lawsuits appears to be the same; he believes the USDA discriminated against him and violated various laws by failing to (1) stop the foreclosure proceedings initiated by Farmers National Bank; (2) timely process his administrative discrimination complaint; and (3) give him a hearing on the merits before an ALJ. However, as discussed below, Lea's claims on this basis have been repeatedly rejected and dismissed by numerous courts.

### 1.   Western District of Kentucky

Lea first raised claims based on this subject matter in the Western District of Kentucky more than ten years ago. Specifically, Lea filed a suit in February 2010 against the USDA and former Secretary Vilsack, as well as private defendants, to enjoin the foreclosure of his farm property and award him damages. *See Lea v. USDA*, No. 1:10cv29 (W.D. Ky.). In that case, Lea raised many of the same claims present here, including failure to act on a moratorium on foreclosure proceedings and discrimination against socially disadvantaged farmers. *See id.*, Doc. 47. The USDA and Secretary Vilsack successfully moved to dismiss. *See id.*, Doc. 80. The court determined, in relevant part, that (1) the

moratorium to which Lea referred applied only to foreclosures initiated by the USDA, not those by private banks, and (2) Lea had failed to state a discrimination claim, as he could not show disparate treatment by simply referring to the *Pigford* class action for the proposition that the USDA had historically discriminated against black farmers. *See id.* The Sixth Circuit affirmed the judgment.[7] *See Corey Lea, Inc. v. USDA*, No. 11-5969, 2013 U.S. App. LEXIS 26305 (6th Cir. Aug. 7, 2013).

In April 2012, Lea filed a second lawsuit against the USDA and former Secretary Vilsack, among others, alleging 13 different claims that all stemmed from the same foreclosure matter. *See Lea v. USDA*, No. 1:12cv52, 2013 U.S. Dist. LEXIS 189592 (W.D. Ky. May 28, 2013). In that case, Lea again raised many of the same claims present here, including violations of equal protection, violations of civil rights statutes, violations of the Food, Conservation, and Energy Act, third party beneficiary claims, and "deliberate

---

[7] In its order affirming the district court's judgment, the Sixth Circuit stated:

> Lea argued that the USDA failed to require [Farmers National Bank] to comply with the terms of the guaranteed loan program and thereby enabled the foreclosure in violation of the [Food, Conservation, and Energy Act's] moratorium on foreclosure. On appeal, he relies on the version of 7 C.F.R. § 766.358 signed on January 27, 2011, and Kentucky law on contract interpretation.

> The district court properly concluded that the plaintiffs failed to state an FCEA claim. Pursuant to the plain language of the FCEA, *see* 7 U.S.C. § 1981a(b)(1), the moratorium applies only to foreclosure proceedings instituted by the USDA. In the instant case, the foreclosure proceedings were not instituted by the USDA, but by [Farmers National Bank], a private corporation. The language of the current version of 7 C.F.R. § 766.358 essentially tracks the language of the statute and does not confer any additional rights. Finally, nothing in the statute suggests that courts should look to state law concerning the applicability of the moratorium. Thus, [Farmers National Bank] had no obligation to delay foreclosure proceedings, even though Lea had a claim of program discrimination pending with the USDA.

*Corey Lea, Inc. v. USDA*, No. 11-5969, 2013 U.S. App. LEXIS 26305, *6-7 (6th Cir. Aug. 7, 2013).

indifference by the USDA's willful delay of the processing of Lea's discrimination complaints." *Lea v. USDA*, Nos. 13-5969/6191, 2014 U.S. App. LEXIS 24835, at *4 (6th Cir. June 4, 2014). The federal defendants moved to dismiss for failure to state a claim, and the court granted the motion. *See Lea*, No. 1:12cv52, 2013 U.S. Dist. LEXIS 189592 at *4. The Sixth Circuit affirmed. *See Lea*, Nos. 13-5969/6191, 2014 U.S. App. LEXIS 24835.

Twelve days after the district court dismissed the above action, Lea filed another lawsuit against the USDA and former Secretary Vilsack, among others, alleging the same 13 causes of action as well as 12 new ones, including alleged due process violations, violations of the Administrative Procedures Act, a pattern and practice of discriminatory acts, breach of contract, conspiracy, fraud, deliberate indifference, and violations of the Equal Credit Opportunity Act. *See Lea v. USDA*, Nos. 14-5445/5493, 2014 U.S. App. LEXIS 25052, *4-5 (6th Cir. Dec. 18, 2014). The federal defendants filed a motion to dismiss, and the court granted the motion on the grounds that Lea's claims were either barred by res judicata or failed to state a viable claim for relief. *Id.* at *7. The Sixth Circuit affirmed.[8] *Id.* at *9-14.

---

[8] In its order affirming the district court's judgment, the Sixth Circuit stated:

> In this case, all four elements of claim preclusion have been met. First, the district court issued a final decision on the merits in Lea's first action against the current defendants. Contrary to Lea's argument that there was no final decision on the merits in his prior action . . . a "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981). Second, the current action involves the same parties as the first action.[] Third, the current action raises numerous issues actually litigated in the first action. Lea asserts on appeal that, even if his current claims are "similar" to those raised before, they are not "identical," and should not be precluded. This argument fails because the third element of claim preclusion not only prohibits parties from

Finally, following numerous lawsuits arising from the same subject matter, the District Court for the Western District of Kentucky enjoined Lea from filing any more lawsuits based on the facts and claims that had already been addressed in his previous lawsuits. *See Lea v. USDA*, No. 1:13cv110, 2014 U.S. Dist. LEXIS 185533, at *12-13 (W.D. Ky. Feb. 6, 2014). In its order, the court noted that Lea had filed <u>eight</u> similar civil actions in the Western District of Kentucky in six years and had not succeeded in any of them. *Id.* at *11-12. The court stated:

> [Lea's] repeated filing of civil actions re-hashing the same arguments is improper and harassing and clearly unwarranted. His submission of frivolous and duplicative lawsuits serves no legitimate purpose, places a tremendous burden on this Court's limited resources, and deprives other litigants with meritorious claims of the speedy resolution of their cases. The similarity of [Lea's] actions and the timing evidence his bad faith and improper purpose in filing the present action.

*Id.* at *13. Accordingly, the court permanently enjoined Lea and his corporate affiliate, Corey Lea, Inc., from filing any civil lawsuit in the Western District of Kentucky "alleging or asserting factual or legal claims based upon or arising out of any of the factual or legal

---

bringing claims they already have brought, but also from bringing those claims that *should have* been brought. *Sanders*, 973 F.2d at 482. Fourth, there is an identity of the current and prior causes of action because the facts and events creating the right of action and the evidence necessary to sustain each claim are the same. *See id*. at 484.

Lea's argument that his suit, which alleged fraud, could not be dismissed on the principles of res judicata does not warrant relief on appeal. Although res judicata only operates if the prior judgment was free from "fraud or collusion," *Riehle v. Margolies*, 279 U.S. 218, 225, 49 S. Ct. 310, 73 L. Ed. 669 (1929), Lea did not allege a defect in the district court's prior adjudication. Rather, he alleged that the defendants committed fraud and collusion in the course of the events that led to Lea's civil complaint. In any event, we noted in Lea's prior appeal that his claims of fraud were frivolous. Consequently, the defendants demonstrated all of the elements of claim preclusion and the district court did not err in dismissing Lea's current claims on that basis.

*Lea*, 2014 U.S. App. LEXIS 25052, *12-13.

claims alleged in this action or any of the actions underlying it." *Id.* at *14. The Sixth

Circuit affirmed. *See Lea*, No. 14-5445/5493, 2014 U.S. App. LEXIS 25052, at *10-11.

2.    Court of Federal Claims

Next, Lea filed three more lawsuits in a two-year period in the Court of Federal

Claims, each of which arose from the same set of facts. *See Lea v. United States*, 126 Fed.

Cl. 203, 217-218 (Fed. Cl. 2016). In these lawsuits, Lea again alleged many of the same

claims present here, including that the USDA racially discriminated against him and

breached a loan guarantee contract to which he was a third-party beneficiary. *Id.* at 209. In

April 2016, the court found that several of Lea's claims were barred by issue preclusion

because they had been repeatedly dismissed on jurisdictional grounds. *Id.* at 214-215.

Additionally, the court dismissed Lea's breach of contract claims relating to the foreclosure

of his farm on the ground that Lea was not the proper party to bring them; indeed, the

relevant agreements were signed only by Corey Lea, Inc. and, as a pro se party, Lea could

not represent the corporate entity. *Id.* at 217-218. Finally, the court stated:

> This is pro se plaintiff's third attempt, in a two-year period, to pursue the
> same claims in the United States Court of Federal Claims, and it should be
> his last filed in this, or any other, trial court. During the previous seven years,
> pro se plaintiff Corey Lea has relentlessly and frivolously taxed the limited
> resources of the federal judiciary by filing numerous, duplicative complaints
> in this and other federal courts based on the same fundamental set of facts.
> Although plaintiff may consider this decision another unhappy ending, this
> decision should send a clear message to Mr. Lea.

*Id.* at 218. The Federal Circuit affirmed. *See Lea v. United States*, No. 2016-2108, 662 F.

App'x 925 (Fed. Cir. 2016). In July 2017, as a result of Lea's numerous and duplicative

filings, the Court of Federal Claims issued an Anti-Filing Order against Lea, enjoining him

from filing any further lawsuits without leave of the court.[9] *See In re: Lea*, No. 1:17af7009, Doc. 1.

### 3.   Middle District of Tennessee

Upon being barred from filing duplicative complaints in both Kentucky *and* the Court of Federal Claims, Lea began to raise the same or similar claims in the Middle District of Tennessee. Specifically, in one of Lea's lawsuits filed in that district, the court stated:

> It appears Lea's claims arise out of a foreclosure on Lea's property [in Kentucky], which Lea believes the USDA should have stopped, and Lea's status as a "socially-disadvantaged farmer and . . . a member of a protected class, African-American."[] He seeks "an expedited formal hearing on the merits before the Department of Agriculture's [ALJ] and . . . if necessary, a judicial review of the ALJ's decision."

*Lea v. USDA*, No. 3:16cv735, 2017 U.S. Dist. LEXIS 217004, at *2 (M.D. Tenn. Dec. 11, 2017). The court further noted that Lea complained that the "USDA ha[d] written rules against the constitution by not allowing black farmers to have a formal hearing before the [ALJ]" while "a similarly situated white male farmer" could. *Id.* at *9.

The presiding Magistrate Judge recommended that Lea's claims be dismissed for improper venue, failure to state a claim, and frivolity under 28 U.S.C. § 1915(e)(2)(B). *Id.* at *17. As to the issue of venue, the Magistrate Judge stated:

> Lea's claims here again center on the property located in the Western District of Kentucky and the USDA's actions surrounding its foreclosure.[] Although Lea frames this action as a challenge to the [ALJ's] failure to hold a hearing on the merits of his civil rights complaint, and not as a direct challenge to the

---

[9] In its Anti-Filing Order, the court noted that, in addition to the three cases before the Court of Federal Claims, "Mr. Lea has filed at least fourteen separate civil complaints in federal courts across the country based on the same facts." *Lea*, No. 1:17af7009, Doc. 1 at 1.

foreclosure of his property, the foreclosure and the events surrounding it still constitute the heart of Lea's claims. As the Sixth Circuit found [in an earlier case], "the subject property was located in Kentucky, it was sold in Kentucky, litigation regarding the property had already been brought in Kentucky courts, and Lea himself resided in Kentucky during the time of the foreclosure and the sale of the subject property."[] Thus, a "substantial part of the events or omissions giving rise" to Lea's claims occurred in the Western District of Kentucky, where the real property that is the subject of this action is situated. 28 U.S.C. § 1391(e)(1). Venue is proper in that district and not the Middle District of Tennessee.

*Id.* at *12-13. The Magistrate Judge did not recommend transfer to the Western District of Kentucky because, as discussed above, Lea was barred from filing similar lawsuits in that district. *Id.* at *13-14.

The Magistrate Judge further determined that, even if venue were proper, Lea had failed to state a valid claim. *Id.* at *14. The Magistrate Judge first discussed Lea's claim that the USDA had violated its rules and regulations by not providing a moratorium against foreclosure until he received a hearing on the merits by an ALJ. *Id*. at *15. The Magistrate Judge stated that this claim failed "because the Western District of Kentucky has held, and the Sixth Circuit has affirmed, that the plain language of the statute Lea references provided a moratorium only on foreclosures 'instituted by the [USDA]'" and, in Lea's case, a private bank initiated the foreclosure. *Id.*

Finally, the Magistrate Judge concluded:

[A]lthough Lea brings his claims under a different cause of action than that alleged in prior suits, he seeks relief for the same injuries that have been litigated many times over.[] Lea has found a new bottle, but the wine is old. The similarity of Lea's many actions and the timing of his filing in this Court

> show that this lawsuit does not have a proper purpose and must be dismissed as frivolous . . . and for failure to state a claim. . . .

*Id*. at *16-17. The District Judge adopted the Recommendation and dismissed the case, *see Lea v. USDA*, No. 16-735, 2018 U.S. Dist. LEXIS 20227 (M.D. Tenn. Feb. 6, 2018), and the Sixth Circuit affirmed, concluding that venue was improper and the claims were frivolous, *see Lea v. USDA*, No. 18-5535, 2019 U.S. App. LEXIS 3613 (6th Cir. Feb. 5, 2019).

4.   <u>District of Columbia</u>

Finally, in June 2019, Lea filed a lawsuit in the District of Columbia against Secretary Perdue, Farmers National Bank, and more than 40 other defendants, again relating to the same general subject matter. *See Kennedy v. Perdue*, No. 1:19cv1720 (D.D.C.). In that case, Lea and another plaintiff filed a 341-page complaint that asserted numerous claims against Secretary Perdue in his official capacity as Secretary of the USDA. *See id.*, Docs. 1, 1-1. The plaintiffs again alleged many of the same claims present here, including that the USDA and Secretary Perdue discriminated against socially disadvantaged farmers and violated a moratorium when they did not stop a private bank from foreclosing on Lea's farm. *See id.*

Secretary Perdue moved to dismiss the complaint, noting that Lea's primary claims appeared to be related to the USDA not enforcing a moratorium to prevent the foreclosure on his farm and not giving him a hearing on the merits before an ALJ. *Id.*, Doc. 63 at 6. Secretary Perdue argued that (1) Lea's claims were frivolous because he had already unsuccessfully raised them in numerous courts; (2) Lea's claims were barred by res

judicata; and (3) Lea failed to state a claim on which relief could be granted. *See id*. at 6-8. On March 17, 2020, the court granted Secretary Perdue's motion to dismiss with prejudice in a one-page order that adopted the reasons set forth in the motion. *Id.*, Doc. 75.

## IV.   DISCUSSION

Defendants now move to dismiss Plaintiffs' Third Amended Complaint for lack of subject matter jurisdiction, improper venue, res judicata, frivolity, and failure to state a claim on which relief can be granted. Doc. 66 at 15. Upon consideration of Defendants' motion, Plaintiffs' response, and the relevant law, the undersigned finds that the Third Amended Complaint is subject to dismissal for the following reasons.

### A.   Binion's Claims – Failure to State a Claim and Lack of Subject Matter Jurisdiction

As to Binion, the Third Amended Complaint fails to state a claim on which relief can be granted. Per Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, the Plaintiff must present "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Here, the Complaint alleges simply that Binion is a socially disadvantaged farmer with a pending discrimination complaint with the USDA. It does not allege any additional facts regarding Binion's discrimination complaint, such as why he filed his complaint, when he filed his complaint, and what injury he has allegedly suffered as a result of or regarding his complaint. The Complaint further alleges that, at some unidentified time, "the ASCR invited the Black farmer to Washington to settle his case, along with Corey Lea" but "[t]he ASCR refused to settle their case and refused to issue a final agency decision." Doc. 59 at 13. Again, there are no additional facts identifying or explaining the case to which Binion refers. Thus, the Court cannot ascertain what occurred, when it occurred, or how it caused injury to Binion, and Defendants cannot be expected to form a responsive pleading.

To the extent Binion alleges Defendants violated a settlement agreement or consent decree in *Pigford*[10], as this Court has already told Binion, this Court does not have subject matter jurisdiction over *Pigford*-related claims. *See Binion*, No. 2:16cv657 (M.D. Ala.), Doc. 32 at 7 (noting that, in a prior case, "[t]he Eleventh Circuit held that a District Court 'does not have an independent basis for jurisdiction to enforce violations of the *Pigford* Consent Decree. The only court that reserved jurisdiction to enforce Consent Decree violations was the District Court for the District of Columbia.'") (quoting *Slaughter v.*

---

[10] Indeed, Plaintiffs discuss the *Pigford* class action throughout their Complaint and one of Plaintiffs' purported causes of action is entitled "Inaction to enforce moratorium provision of . . . the Pigford Settlement Agreement." Doc. 59 at 42. Additionally, despite this Court's previous ruling that it lacked jurisdiction over the claims in Binion's prior lawsuit, as they were all "inextricably intertwined" with the *Pigford* class action, Plaintiffs nevertheless assert several of the same claims here. *See Binion*, No. 2:16cv657 (M.D. Ala.), Doc. 32 at 2.

*USDA*, 555 F. App'x 927, 929 (11th Cir. 2014)). Thus, to the extent Binion believes he has a valid claim regarding the *Pigford* litigation, he must bring that claim in the District of Columbia—not the Middle District of Alabama.

Accordingly, the Third Amended Complaint should be dismissed as to Binion for failure to state a claim on which relief can be granted and lack of subject matter jurisdiction.

## B.     Lea's Claims Regarding Foreclosure – Improper Venue

As to Lea, the vast majority—if not all—of the claims in Plaintiffs' Third Amended Complaint relate specifically to the 2009 foreclosure of Lea's Kentucky farmland, which the USDA allegedly failed to stop. However, as Lea has been made repeatedly aware, the proper venue for such claims is the Western District of Kentucky, which has barred Lea from filing such claims. Like many of Lea's prior lawsuits, Lea attempts to circumvent this issue by framing this action as a challenge to the USDA's handling of his civil rights complaint, rather than simply challenging the foreclosure of his property. However, as Lea has been told numerous times in his prior lawsuits, regardless of how he frames his causes of action, the foreclosure and the events surrounding it are nevertheless the heart of Lea's claims.[11]

"In an action brought against an agency or officer of the United States, venue is proper in the district in which a defendant resides, a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the

---

[11] Indeed, if there is any doubt that the foreclosure is the crux of this litigation, Lea has filed a motion asking the Court to set aside the "Warren County, Kentucky Circuit Court foreclosure" and "immediately return the farmland located at 2307 New Cut Rd., Alvaton, Kentucky 42122." Doc. 69 at 1.

subject of the action is situated, or the plaintiff resides if no real property is involved in the action." *Lea*, 2018 U.S. Dist. LEXIS 20227, at 221 (citing 28 U.S.C. § 1391(e)(1)). First, Plaintiffs have made no showing that Defendants reside in the Middle District of Alabama. *See Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1313 (S.D. Fla. 2018) ("When a defendant challenges venue as improper, the plaintiff bears the burden of showing that the venue selected is proper.") (citations omitted). Rather, it appears that they reside in Washington, D.C., where the USDA headquarters is located. *See Pacific Solar Energy, S.A. de C.V. v. United States Dept. of the Treasury*, No. 16-25324, 2017 WL 6730069, at *2 (S.D. Fla. Dec. 29, 2017) ("For venue purposes, a federal agency or officer resides where it performs its official duties. [A] federal agency does not reside in a district merely because it has a regional office in that district.") (internal quotations and citations omitted); *Houston v. Stuckey*, No. 1:14cv191, 2014 WL 5365048, at *1 (S.D. Ga. Oct. 21, 2014) (finding the USDA "resides" in Washington, D.C. because that is where it is headquartered).

Second, as discussed above, "a substantial part of the events or omissions giving rise to the claim occurred" and "a substantial part of the property that is the subject of the action is situated" in the Western District of Kentucky. As other district courts and the Sixth Circuit have explained to Lea, "the subject property was located in Kentucky, it was sold in Kentucky, litigation regarding the property had already been brought in Kentucky courts, and Lea himself resided in Kentucky during the time of the foreclosure and the sale of the subject property." *Lea*, 2017 U.S. Dist. LEXIS 217004, at *13 (quoting *Lea v. Warren Cty.*, No. 16-5329, 2017 U.S. App. LEXIS 18884, at *2 (6th Cir. May 4, 2017)).

Indeed, Lea appears to recognize this, as the Complaint states that the farmland at issue is in Kentucky and that the foreclosure occurred in Kentucky. *See* Doc. 59 at 24. The Complaint also contains numerous pages of Kentucky common law and statutes. *See id.* at 18-22, 34, 38. Thus, as to those claims related to the foreclosure of Lea's Kentucky farmland—which make up the vast majority, if not all, of the Third Amended Complaint— venue is proper in that district and not the Middle District of Alabama.[12]

Upon finding a case to be improperly filed in its district, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As discussed above, the Western District of Kentucky has "permanently enjoined [Lea] from filing any civil lawsuit . . . alleging or asserting factual or legal claims based upon or arising out of [the foreclosure]." *Lea*, No. 3:16cv735, 2017 U.S. Dist. LEXIS 217004, at *13 (citing *Lea*, No. 1:13cv110, 2014 U.S. Dist. LEXIS 185533, at *14). Thus, the undersigned finds that transferring this matter would not serve the interest of justice and, instead, dismissal is appropriate.

### C.  Lea's Additional Claims – Res Judicata

Finally, to the extent Lea has stated claims not directly related to the 2009 foreclosure of his farm, those claims appear to be barred by the doctrine of res judicata, or claim preclusion, as Lea has brought numerous lawsuits against Defendants, based on the same nucleus of operative fact, which have resulted in final judgments on the merits by

---

[12] Venue may also be proper in the District of Columbia, as that is where Defendants reside. However, notably, the District Court for the District of Columbia previously concluded that the Western District of Kentucky was the proper venue for Lea's foreclosure-related claims. *See Lea v. USDA*, No. 1:14cv40, Doc. 3 (transferring action to the Western District of Kentucky).

courts of competent jurisdiction. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000) (describing elements of res judicata); *Maldonado v. United States AG*, 664 F.3d 1369, 1375 (11th Cir. 2011) (noting that res judicata applies to claims arising from the same "nucleus of operative fact," even if the legal theories presented are different). In fact, several of Lea's prior lawsuits have been dismissed on that basis. *See, e.g., Lea*, 2014 U.S. App. LEXIS 25052, at *11 (affirming dismissal of Lea's claims alleging discrimination and other claims related to foreclosure of his farm on res judicata grounds).

Res judicata precludes claims "a plaintiff actually raised or could have raised in a prior suit when (1) there is a final judgment in a prior suit on the merits; (2) the decision in the prior suit is rendered by a court of competent jurisdiction; (3) the parties in both suits are identical; and (4) both suits involve the same cause of action." *O'Connor*, 200 F.3d at 1355 (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990)). "As for the fourth element, two cases are generally considered to involve the same cause of action if the latter case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as the former one." *Maldonado*, 664 F.3d at 1375 (citations and internal quotations omitted). Indeed, "[r]es judicata acts as a bar not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Id.* at 1376 (citations and internal quotations omitted).

Here, the only claims that *may* be unrelated to the foreclosure of Lea's farm are for violations of equal protection and due process, violations of various civil rights statutes,

and a pattern and practice of discrimination. *See generally* Doc. 59. However, Lea has brought those claims—as well as others in the Complaint—time and time again against identical Defendants[13], based on the same nucleus of fact—the USDA's alleged failure to act on his administrative discrimination complaints and the events underlying those complaints—resulting in a final judgment on the merits in a court of competent jurisdiction. For example, in the Western District of Kentucky, Lea alleged violations of equal protection and due process, violations of various civil rights statutes, *and* a pattern and practice of discrimination by the USDA. *See Lea*, 2014 U.S. App. LEXIS 25052 at *4-5 (discussing prior suit alleging equal protection and civil rights violations and current suit alleging due process violations and a pattern and practice of discriminatory acts). Both suits were dismissed for failure to state a claim and on res judicata grounds, and both dismissals were affirmed by the Sixth Circuit. *See Lea*, 2014 U.S. App. LEXIS 24835, at *13; *Lea*, 2014 U.S. App. LEXIS 25052 at *14; *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (noting that a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits). Thus, those claims are barred by res judicata.

It does not appear that Lea has stated any claims for which venue is proper in this district or which are not barred by res judicata. However, even if there were any such claims in the Complaint, they are buried among numerous claims that Lea has repeatedly been

---

[13] *See Bethesda Lutheran Homes and Serv., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001) (finding that "res judicata is not avoided by joinder" and, therefore, a plaintiff cannot avoid the bar of res judicata by bringing in additional plaintiffs).

told lack merit or are improper before this Court. Accordingly, the undersigned recommends dismissal of the entire Third Amended Complaint.

## V.   CONCLUSION

For the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' Motion to Dismiss (Doc. 65) be GRANTED; and

2.      This case be DISMISSED.

It is further

ORDERED that on or before **February 17, 2021**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 3rd day of February, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MA